HOPPES et al. v. WILLIAMS et al. (No. 7757.)

(Court of Civil Appeals of Texas. Galveston. June 4, 1919.)

CONTRACTS ⬅=321(4)—OIL WELL CLEANING CONTRACT — ABANDONMENT OF CONTRACT— RECOVERY OF ADVANCES.

Where oil well drilling contractors abandoned contract to clean oil well, because of oil company's noncompliance with agreement to furnish them necessary tools wherewith to do the work, they were not liable to the company for advances made and used by them in part for purchase of supplies which the company had agreed to furnish, and in part as part payment on contract, where their damages exceeded such part payment in amount.

Appeal from Harris County Court; Walter E. Monteith, Judge.

Suit by W. B. Williams and another against W. J. Hoppes and another. Judgment for plaintiffs, and defendants appeal. Reversed and rendered.

Fred R. Switzer, of Houston, for appellants.

W. B. Ware, of Houston, for appellees.

LANE, J. This suit was brought by appellees against appellants to recover the sum of

$395, alleged to be due them upon an account claimed by the Bell Oil Company against appellants and which was by said company transferred to appellees. Upon trial by the court without a jury, judgment was rendered in favor of appellees for $214.10.

In their petition the plaintiffs, appellees here, alleged the existence of a certain contract between the Bell Oil Company and appellants, by the terms of which appellants agreed, for a valuable consideration, to pull the pipe from a certain well and to clean the same out. They alleged that after appellants began work under said contract and during said work the Bell Oil Company furnished them with money with which to buy fuel oil and $80 with which to purchase fishing tools, as it had contracted to do, and among other things advanced to appellants $395 on said contract to enable them to pay for labor, etc.; that thereafter appellants abandoned their contract without performance of any part thereof of value to said oil company, and that at time of such abandonment they were indebted to the oil company in the sum of $395, and that said oil company had transferred its claim against appellants to them.

Defendants answered, denying that they had breached the contract with the oil company, and averred that after they had, at a large expense, moved their machinery upon the ground for the purpose of pulling the pipe from said well and cleaning the same out as per their contract, the oil company failed and refused to furnish them with necessary tools with which to perform the work undertaken, as it had contracted to do, and thereby breached the contract to appellants' damage in a sum greater than the sum advanced to them by said oil company. They prayed that such sum be allowed as an offset to the claim of appellees.

There is no statement of facts on file in this court. Appellants rely, for a reversal of the judgment rendered by the trial court and the rendition of a judgment in their favor by this court, upon the findings of fact filed by the trial court, which are in substance as follows:

(1) That on the 24th day of May, 1916, the Bell Oil Company, a corporation, and the defendants, W. T. Hoppes and J. N. Coleman, doing business under the firm name of Hoppes & Coleman, made and entered into a written contract reading as follows:

"Know all men by these presents, that we, Hoppes & Coleman, well drillers at Humble, Texas, and the Bell Oil Company of Houston, Texas, are the parties to the within contract, witnesseth:

"That Hoppes & Coleman hereby agree and contract to clean out a well known as the Rucker well, and near the Kellersberger holdings in Humble, Texas, and to pull all four and one-half (4½) inch piping and reset four and one-half (4½) liner, provided the six (6) inch casing is good, for the sum of one thousand ($1,-000.00) dollars and the work guaranteed; that is, if they don't clean out, as above stated, Hoppes & Coleman are not to charge.

"The Bell Oil Company is to furnish all supplies, cable tools, fuel oil, and fishing tools necessary, except the rig furnished by Hoppes & Coleman.

"Hoppes & Coleman further agree and contract to drill three (3) more wells to a depth of false cap rock, about 1,050 feet; but in case they do not find false cap rock, then they are to drill to a true cap rock about 1,140 feet and to set six (6) inch casing on same.

"Hoppes & Coleman hereby agree and obligate themselves that when drilling, if they should pass through as much as eight (8) feet of pay sand, then they are to have their hole in condition so that they can make a test to see if oil is produced in paying quantities; and in case oil is found in paying quantities in the discretion of the Bell Oil Company, then Hoppes & Coleman are to leave the well in good condition and to receive pay hereafter set forth for the number of feet actually drilled.

"In case gas is struck at any depth in paying quantities, and the Bell Oil Company decides to set the casing for said gas, then Hoppes & Coleman agree and contract to properly equip the well for gas and to receive pay for the number of feet that they actually drilled in said well.

"If for any reason the Bell Oil Company decides for Hoppes & Coleman not to drill to true cap rock on any well, then Hoppes & Coleman are to receive pay per foot as hereinafter stated for the number of feet actually drilled.

"Compensation.

"As a compensation to Hoppes & Coleman for drilling as above stated, the Bell Oil Company contracts and obligates itself to pay Hoppes & Coleman one ($1.25) dollar and twenty-five cents per foot for each foot drilled and twenty-five (25%) per cent. of said amount is to be paid to Hoppes & Coleman in stock at par value in the Bell Oil Company. Said stock is to be issued when drilling is completed.

"But Hoppes & Coleman are to clean out the Rucker well for one thousand ($1,000.00) dollars, seven hundred and fifty ($750.00) dollars to be paid in cash and two hundred and fifty ($250.00) dollars in stock. But Hoppes & Coleman will not charge the Bell Oil Company for cleaning out this well, unless they put it in good shape for pumping.

"The company agrees to furnish everything pertaining to the drilling and equipping of said wells, except the drilling rigs, which are to be furnished by Hoppes & Coleman and all labor for the rig.

"The Bell Oil Company agree and contract to have enough money to cover the drilling of one well deposited in the bank, sufficient to pay, before drilling, and before Hoppes & Coleman are required to begin drilling. Said money is to remain in the bank until well is completed; then it is to be turned over to Hoppes & Coleman, or enough thereof to pay them, according to the terms above set forth.

"In case Hoppes & Coleman are engaged in other work, the Bell Oil Company agrees to give them ten (10) days' notice in which to commence operation in drilling.

"Both parties obligate themselves to work

in good faith and in view of getting the best results. W. T. Hoppes.

"J. N. Coleman.

"The Bell Oil Company,
"By C, Fimey Bates, V. P. and Manager."

(2) That the defendants are both experienced oil well men and have been engaged in the business of drilling wells for oil and reclaiming and cleaning oil wells for many years.

(3) That pursuant to the said contract, and within 10 days after its date, the defendants moved their rotary drilling rig, engine, and other equipment on to said Rucker well mentioned in the contract. That defendants consumed two days with a full crew, consisting of one driller and four helpers, to place their rotary drilling rig, engine, and equipment in proper position to clean out the said well.

(4) That after the defendant rotary drilling rig, engine,. and equipment was placed in proper position to clean said well the defendants began in good faith to perform their part of the contract, and did all the work in that regard they could do with the tools and equipment they had, and the condition of the Rucker well, and the location of the old piping therein was such that the defendants were compelled to have certain tools called "fishing tools" before they could proceed further with the work. That in accordance with the terms of the written contract the Bell Oil Company furnished the defendants with sufficient money to procure and purchase "fishing tools" necessary.

(5) That after they had received the "fishing tools" the defendants proceeded with the said work of cleaning the said well and removing the old pipe therefrom, and did all the work they could do or perform without the assistance of other tools called "cable tools," and at such time it was necessary for the defendants to have the use of the "cable tools" before they could proceed with the work.

(6) That on July 18, 1916, the defendants requested the Bell Oil Company to furnish them with the "cable tools," and on the same day the said company, by and through its duly authorized officer and agent, executed and delivered to the defendants the following instrument in writing:

"Houston, Texas, 7/18, 1916.

"This is to certify that we authorize Hoppes & Coleman to rent cable tools for use on our well and that we will pay for same.

"Bell Oil Company,
"Per P. A. McKinzie, Treasurer."

That within a short time defendant made inquiry in the oil fields at Humble, Texas, where the well in question was located, of two persons, who had cable tools that they were accustomed to rent; said two persons being all the persons in that vicinity known to the defendants who were accustomed to rent "cable tools." That one of the said parties advised the defendants that he was using his "cable tools," and would be for 10 days, and could not then rent same. The other party of whom inquiry was made stated that he would not rent his tools on the strength of the said written order, without he was paid $25 cash in advance per day, for each day same were used, as rental for same. That the defendants within three or four days notified the Bell Oil Company of their efforts to secure said "cable tools" and. the result thereof as above set out. And defendant made no further effort to secure said "cable tools" from parties who had them for hire.

(7) That on or about August 27, 1916, the defendants again made a request upon the Bell Oil Company to furnish the "cable tools," and it thereupon agreed to furnish same. That the next day one of the officers of the said company went out to said well and found a part of defendant's machinery loaded on a wagon, and thereafter the Bell Oil Company made no effort to and did not furnish said "cable tools." That at the time of the visit of the officer of the Bell Oil Company the defendants had sufficient machinery located at or near the said well to properly operate said "cable tools," and had the "cable tools" been furnished the defendant could have cleaned out the said well and fully complied with all the terms and conditions of the said contract with reference to said well. That for a period of 30 days after date of August 27, 1916, the defendants had sufficient machinery located at or near said well to properly operate said cable tools. That at no time has the Bell Oil Company or any officer thereof made a demand or request upon the defendants to finish cleaning the said well, or tendered or furnished to the defendants the said "cable tools."

(8) That during the operation and work by the defendants on said well they called upon the Bell Oil Company for money to buy fuel oil, and "fishing tools" and supplies, and to advance the defendants some money on the contract to help meet the expenses of labor being performed in the work. That for the said purpose the Bell Oil Company advanced defendants the sum of $410. That out of said money the defendants, in accordance with directions from the company, expended the sum of $101.20 for fuel oil, and the further sum of $94.70 for "fishing tools" and supplies, being items which the company under its contract was bound to furnish. That the above expenditures were fairly made by defendants, and the prices paid for the items purchased with said money were reasonable charges. That the balance of the money, amounting to $214.10, was advanced by the Bell Oil Company and accepted by the defendants with the agreement and understanding between them that it was part payment on the contract for cleaning said well.

(9) That the defendants, in order to move their rotary drilling rig, engine, and equipment to said well, were required to pay the sum of $50 to have the same moved, which was a reasonable expenditure and charge for said work.

(10) That up to the time defendants did their last work on said well the labor furnished and performed by the defendants and the use of their machinery up to that time was of the reasonable value and cost of $336.

(11) That on or about the 19th day of December, 1917, the Bell Oil Company made, executed, and delivered to the plaintiffs an assignment of their claim against defendants. (The transfer was alleged in plaintiff's petition.)

(12) That at the time of the making of said contract between the Bell Oil Company and the defendants, and the performance of the work thereunder by the defendants, there was a general and universal custom, in the community where the contract was made and the work performed, that where an agreement between an

oil company and the well contractors provided that the oil company should furnish tools necessary to carry on the work which was already begun, when said tools were needed, that such tools would be furnished, by the party obligated to furnish same, within 24 hours after the request for said tools was made, but Bell Oil Company had no notice of such custom."

We have reached the conclusion that, under the foregoing findings of facts of the trial court, judgment should have been rendered in that court for appellants, and that the judgment rendered is not sustained by the facts found. Having reached such conclusion, the judgment of the trial court is reversed, and judgment is here rendered for appellants, W. T. Hoppes and J. N. Coleman.

Reversed and rendered.